## THE SIDNEY M. HAUPTMAN.

## THE ELEANOR BUSH.

Circuit Court of Appeals, Second Circuit.
July 3, 1929.

No. 318.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for appellant.

Duncan & Mount, of New York City (O. D. Duncan, Henry W. Dieck, Jr., and Charles R. Millett, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The controversies of the parties to the libel and cross-libel arose because of a collision in New York Harbor at about 8:30 p. m. on November 19, 1925, between the port car float of libelant's tug Eleanor Bush and the steamship Hauptman. The night was clear, the tide flood, and the collision occurred at a point between Castle William, on Governors Island, and Ellis Island.

Libelant's tug Bush, carrying a car float on either side, was bound down the North River from the West Shore Terminals near Seventy-Second street, Manhattan, to the Bush docks, Fifty-First street, Brooklyn. When somewhere between the Jersey Central docks and the Battery, she sighted the tug Agnes Moran, which had come from Pier 2, North River, and was bound for Constable Hook, proceeding southwestwardly and across the course of the Bush. Just as the Moran passed in front of the Bush, the latter observed the Hauptman, a steamer 400 feet long and having 10,000 tons deadweight, about half a mile ahead, coming up along the lower end of Governors Island. The Hauptman was bound up the North River for Hoboken. The Bush and the Hauptman, according to the testimony, were then in a meeting position, so that both colored lights of each vessel were visible to the other. As the Hauptman passed the southern end of Governors Island, her pilot testified that he saw the tug Moran with a deck scow in tow about an eighth of a mile ahead and two points on his starboard bow, and also observed the Bush about a half mile ahead and three points on his starboard bow. He also agreed with the other witnesses that both

the red and green lights of the Bush were visible; but this could not have been true, if she was three points on his starboard. The Bush must have been much nearer the center of the channel than a heading two points on the starboard bow of the Hauptman would indicate.

The Hauptman was coming up in a flood tide, and her pilot, after the Moran had passed between the Hauptman and the Bush, put her helm hard aport for 25 seconds prior to the collision (folio 467). Each vessel claimed to have ported two or three points prior to the collision, which was between the port float of the Bush at a point 20 feet from the end and the bow of the Hauptman.

The trial judge found that the vessels exchanged a one-blast signal for a port to port passage, as was proper, and, in spite of testimony to the contrary, this finding is borne out by the probabilities. Robinson, the master of the Moran, an apparently disinterested witness called by libelant, testified that the Hauptman was favoring the center of the channel as she proceeded (folio 242); and Scott, the master of the Wyomissing, who came up between the Hauptman and Governors Island about the time the collision occurred, said that the car float that had been struck was at that time away out in the middle of the river. Scott also at one place estimated his distance off Governors Island as not far from 1,000 feet and the Hauptman's as 200 or 300 feet farther out in the river. That would place the Hauptman somewhat east of the center of the channel (folios 293, 298).

Libelant's claim that the collision was away over by the New Jersey shore and within a quarter of a mile off Ellis Island seems impossible, in view of the testimony of the master of the Bush that she was on a west-southwest course and heading for the Statue of Liberty at the time the collision occurred. But even if the position of the Bush at the time of the collision was, as her master said, on a line drawn from Castle William to the buildings on Ellis Island, and on an intersecting line drawn west-southwest from the first line to the Statue of Liberty, such a position would place the collision about halfway between Castle William and Ellis Island, and considerably farther toward the center of the channel than the extreme claim of libelant suggests. The recollection of interested witnesses, testifying more than two years after the event, under circumstances of great excitement, can have little weight. But such confidence as we may have in the recollection of witnesses of such remote events should be placed in the statement of apparently disinterested persons, like Robinson and Scott, rather than in the testimony of the officers and members of the crews of the colliding vessels. The testimony of Robinson and Scott indicates that the collision, even if somewhat on the New Jersey side, was not far from the center of the channel.

But we have the undeniable fact that these vessels collided on a clear night in a place where there was plenty of navigable water on either side. Scott testified that when he saw the vessels there was no danger of collision for there was "lots of room" (folio 313). The Hauptman did not begin to go hard aport until 25 seconds before the collision. The Bush stopped her engines for 30 seconds shortly before the collision, though, according to the story of her pilot, the Hauptman was coming straight on and both lights were still visible. The Bush never put her wheel hard aport.

The bow of the Hauptman and the port float of the Bush collided at an angle of about 35° at a point only about 20 feet from the end of the float. We cannot precisely calculate what the effect of this was upon the Bush and her floats; but it is evident that by stopping her engines the Bush lost considerable ground when bucking a flood tide, and we are quite certain that she would have avoided the collision, had she adhered to the plan of navigation agreed upon and proceeded without stopping. As conditions developed, such adherence offered the only way of escape, and the failure of the Bush to proceed was a fault that contributed to the collision.

While each vessel claimed to have ported from the time she observed the other, and to have gone two or three points to starboard, it is quite manifest that they did not do this, if they were in a head-on position at the beginning, or the collision would never have occurred. That both ported may be well believed, and seems indeed established; but that they did not do it soon enough, or sufficiently, is evident from the final catastrophe. The most likely explanation of the collision seems to be that the Moran took up too much of the attention of the Bush and the Hauptman, and that they paid little regard to one another until the Moran had passed between them and it was too late to avoid collision.

The Hauptman did not begin to go hard aport until 25 seconds before the collision, and the Bush never hard aported at all. Each vessel was at fault for not directing her course sufficiently far to starboard to

clear the other, although there was ample water within which to navigate. The Bush was also at fault for stopping her engines for 30 seconds on the very eve of collision, when the only path of safety lay in going on. The court below held that this error was in extremis, but it was flagrant and inexcusable. Queen Ins. Co. v. Globe & Rutgers Fire Ins. Co. (D. C.) 278 F. at page 777. Neither vessel made any seasonable and sufficient effort to avoid the other, and both were at fault.

The contention of the libelant that the Hauptman was presumptively in fault for not standing by the Bush to render assistance, as required by chapter 875, § 1, of the Act of September 4, 1890 (33 USCA § 367), is without merit. No such fault was charged in the libel, or the answer to the cross-libel, and the Hauptman apparently returned to the scene of the collision as soon as her navigator thought it safe and practicable, so that there was evidently no purpose to run away. Nor was it shown that there was any assistance which the Hauptman could have rendered, for the Wyomissing, as well as the Bush, were present and prepared to aid.

Interlocutory decree modified, to hold both vessels equally liable.